UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBIN CLAIRE FERRY,

    Plaintiff,

v.    CASE NO. 6:19-CV-2371-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. § 405(g). Plaintiff argues the Appeals Council (AC) erred in its consideration of new evidence Plaintiff submitted to it after the administrative law judge (ALJ) issued her decision and that the ALJ erred in her consideration of Plaintiff's complaints of subjective, disabling pain (doc. 20). After considering the parties' arguments and the administrative record, I find the Commissioner's decision is supported by substantial evidence. I affirm.

*A.    Background*

Plaintiff Robin Ferry was born on December 31, 1962. (R. 36) She was 52 years old on her alleged onset date of March 31, 2015, and 53 years old on her date of last insured (DLI) of December 31, 2015. (R. 16) Plaintiff alleges she suffered from disabling degenerative disc disease, neck pain, bone spurs, a pinched nerve, spinal stenosis, hypertension, and anxiety during this time period. (R. 67) She has had three back surgeries: a C4-C6 anterior microdiscectomy in May 2006,

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

1

a C6-C7 anterior microdiscectomy in June 2012, and a C3-C4 microdiscectomy in November 2015 (Doc. 20 at 3-5). Treating neurosurgeon Mitchell Supler, M.D. of the NeuroSpine Institute in Orlando performed each of these surgeries.

Plaintiff is a college graduate with a degree in business management. (R. 39) She has past work experience as a buyer for a souvenir company, a sales representative, and most recently as an outside auditor for Dell Computers (a job that required her to drive around the state). (R. 39-44) Plaintiff is married with a college-age daughter. Her husband is an engineering consultant and is the family's sole income earner since Plaintiff stopped working in March 2015. (R. 38, 43) In Plaintiff's words, she stopped working because "my neck was continually – continuously getting worse. It would get better after a surgery and then – for a while and then it would just slowly just start getting worse and about that point, I – it was – it was too hard for me to get to and drive to like Tallahassee." (R. 45) Plaintiff continued: "Sometimes I'd have to pull over at a rest area and – and stop and rest or sometimes I'd get to the hotel and I couldn't get to my audit the next day. I'd have to stay another day in the hotel, rest, and take my medication. So if I was taking my medications and stuff, I couldn't drive." (R. 45-46)

After a hearing, the ALJ found that Plaintiff had not performed substantial gainful activity between March 31, 2015 (her alleged onset date), and December 31, 2015 (her date last insured for DIB purposes). (R. 16) The ALJ identified Plaintiff's degenerative disc disease, right hip bursitis, and hypertension as severe impairments but found Plaintiff not disabled because she maintained the residual functional capacity (RFC) for light work with some limitations. (R. 17, 19) Specifically,

> [t]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). With regard to her non-exertional limitations, the claimant can frequently climb

>> ramps, stairs, ladders, ropes, and scaffolds.  She can also frequently balance, stoop, kneel, crouch, and crawl.

(R. 19)  In a November 13, 2018, decision, the ALJ found that, with this RFC, Plaintiff could perform her past work as a buyer, sales representative, and auditor. (R. 22)

After the ALJ's decision, Plaintiff submitted a physical RFC evaluation dated March 5, 2019, completed by Dr. Supler.  Dr. Supler opined that, between March 31, 2015, until the date of his most recent treatment of Plaintiff, Plaintiff suffered from limitations that rendered her disabled. (R. 7-10)  The AC considered this new evidence but found it "[did] not show a reasonable probability that it would change the outcome of the decision[,]" and denied review. (R. 2)  Plaintiff, her administrative remedies exhausted, filed this action.

    *B.*    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations.  These regulations establish a "sequential evaluation process" to determine if a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a)(4).  Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4).  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists."  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

  C.  Discussion

    1.  *AC's evaluation of new evidence*

Plaintiff's first argument is that the AC erred in its consideration of new evidence.  Plaintiff submitted to the AC for the first time a physical restrictions evaluation completed by Dr. Supler on March 5, 2019, four years after Plaintiff's DLI and four months after the ALJ's November 13,

2018 decision. (R. 7-10)  Dr. Supler's evaluation purports to be his "opinion of [Plaintiff's] limitations for the time period beginning 3/31/15 through the date of [her] last treatment." (R. 7) The AC considered this new evidence but found there was no reasonable probability it would change the outcome of the Commissioner's decision. (R. 2)

To backtrack, an individual claiming Social Security disability benefits must prove she is disabled. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before her date of last insured (DLI).  42 U.S.C. § 423(a)(1)(A). Because Plaintiff's DLI was December 31, 2015, she must show she was disabled on or before that date.

A claimant may present evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If a claimant presents evidence after the ALJ's decision, the AC must consider it if it is new, material, and chronologically relevant.  20 C.F.R. § 404.970(a)(5); *see also Washington v. Comm'r of Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015).  Evidence is material if a reasonably possibility exists that the evidence would change the administrative result.  *Washington*, 806 F.3d at 1321.  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(a)(5).  The AC must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence.  *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Comm'r of Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*).  In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by

substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec. Admin.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Here, in denying Plaintiff's request for review, the AC stated: "You submitted a Physical Restrictions Evaluation from Mitchell Supler, M.D., dated March 5, 2019 (4 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2)  Although Plaintiff seeks more of an explanation, the AC is required to consider new evidence but not required to explain its decision when denying review. *See* 20 C.F.R. §§ 404.967, 404.970; *Burgin v. Comm'r of Soc. Sec. Admin.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").

Evidence may be chronologically relevant even if it post-dates the ALJ's decision. For instance, in *Washington*, 806 F.3d at 1322, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." *Id.*; *see also Wordsman v. Berryhill*, No. 3:17-cv-1130-J-JRK, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

On the other hand, in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly

6

different" from those present in *Washington*. The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. *Id*. And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id*.; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see also Griffin v. Comm'r of Soc. Sec. Admin.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant time period).

Plaintiff argues that Dr. Supler's evaluation "covers the time from March 31, 2015 – 9 months prior to the date last insured. Moreover, Dr. Supler was specifically asked to review not only his treatment notes, but also MRIs, Xrays, and pain management records from Physician Associates and Todd Sontag, D.O." (Doc. 20 at 27). And, she contends, "Dr. Supler's treatment notes support his opinion. No other doctor in the record had treated Plaintiff as long as Dr. Supler. He performed surgeries in 2004, 2012, and November 2015." (*Id*.).

Nonetheless, I find that Dr. Supler's RFC evaluation is not material (*i.e.*, not reasonably likely to change the administrative result).  Plaintiff must show she was disabled on or before her DLI (December 31, 2015).  Dr. Supler's role as Plaintiff's long-term treating physician does not change that his RFC evaluation (authored four years after Plaintiff's DLI) is inconsistent with his treatment notes during the relevant time period.  The neurosurgeon opined in his RFC evaluation that Plaintiff could sit for four hours, stand or walk for three hours, and recline for one hour during an eight-hour workday. (R. 7) She would experience good days and bad days when she would be unable to turn her neck or look up or down. (R. 8)  She could lift five pounds frequently and 10 pounds occasionally and reach above her head only 10 percent of the time.  She could never crawl. (R. 9)  These restrictions are more severe than those identified by the ALJ, who opined Plaintiff maintained the RFC to perform light work, which requires walking and standing for up to six hours in an eight-hour day and the ability to frequently crawl and climb. (R. 19)

A summary of Dr. Supler's treatment of Plaintiff provides context.  In 2006, he performed Plaintiff's first back surgery, a C4-C5 and a C5-C6 decompression and fusion. (*See* R. 389)  This surgery occurred well before Plaintiff's alleged onset date, and the records are not included in the administrative transcript.  In May 2012 (roughly three years prior to Plaintiff's alleged onset date), Plaintiff returned to Dr. Supler.  He noted that since her 2006 surgery she had developed adjacent degenerative disc disease at C6-C7. (R. 388)  By that point, Plaintiff had tried physical therapy, traction, three rounds of epidural injections, and acupuncture without success. (R. 389)  Dr. Supler recommended a second surgery, this time a C6-C7 fusion, which he performed in June 2012. (*Id.*, R. 384)  Plaintiff's post-operative treatment notes from that time period indicate she was doing well, and her symptoms were resolving. (R. 383-84)  In fact, in July 2012, Plaintiff told Dr. Supler (10 days post-surgery) that her pain had completely resolved, and she was pleased with the results.

(R. 386) By September 2012, Plaintiff said she had complete resolution of any radicular pain. (R. 384) She had attempted to increase her exercise level too quickly, however, which led to neck pain, so Dr. Supler recommended she start with range of motion exercises before progressing to weights. (*Id.*)

Plaintiff returned to Dr. Supler in September 2013 (roughly two years before her alleged onset date) for a long term follow up after her June 2012 C6-C7 fusion. (R. 387) She was experiencing neck discomfort and spasms that radiated down her shoulder blades. (*Id.*) Dr. Supler referred Plaintiff to pain management (which she pursued through Todd Sontag, D.O. of Orlando Physician Associates) and in the meantime gave her one more refill of pain medications Norco and Flexeril. (*Id.*) Plaintiff was working as an auditor at the time.

Plaintiff then has a gap in her treatment with Dr. Supler until 2015, when the neurosurgeon ordered a cervical MRI due to Plaintiff's complaints of unresolved pain. The August 2015 imaging showed she had C3-C4 disc protrusion that was more pronounced than her comparison MRI in March 2011. (R. 313-14, 409) Eventually, Plaintiff and Dr. Supler agreed on a surgical plan, and she had a C3-C4 microdiscectomy in November 2015. (R. 382) Two weeks post-surgery, she reported mild neck stiffness but was otherwise doing well. She noted a marked improvement in her pain level. (*Id.*) In February 2016 (two months after Plaintiff's DLI), she reported for her three-month follow up appointment with Dr. Supler. She was doing "very well" and said she feels "1000% better." (R. 381) Dr. Supler wrote that Plaintiff "has done extremely well. Return on as-needed basis." (*Id.*)

The ALJ reviewed Dr. Supler's treatment notes, including Plaintiff's August 2015 MRI. The ALJ wrote:

> An MRI of the claimant's cervical spine, taken on August 11, 2015, did reveal the presence of protrusions at the C2-3, C3-4, and C6-7 cervical

9

> levels. Osteophytes were also noted at C4-5 and C5-6. Nevertheless, however, the imaging confirmed the protrusion at C2-3 did not "touch or efface the cord or exiting nerve roots". In addition, the osteophyte at C5-6 and the protrusion at C6-7 also resulted in only "*mild* foraminal narrowing" at both levels. It also bears noting that the C7-T1 cervical level was also deemed "*normal* in height and signal" with "no spondylosis, facet arthropathy, or uncovertebral joint arthrosis."

(R. 21) The ALJ observed that "[o]bviously, the objective imaging detailed above confirms the presence of severe physical impairments during the period at issue." (*Id.*) But, after reviewing Dr. Supler's 2015 treatment records as well as the records of Plaintiff's treating pain management doctor, Dr. Sontag, the ALJ found that "[t]hese records following the surgery fail to corroborate the extent of physical limitations alleged by the claimant. . . . There is certainly no indication the claimant's condition worsened prior to the date last insured. In fact, x-rays of the claimant's cervical spine dated December 16, 2015 confirmed there was 'no evidence of hardware failure or loosening'" after her November 2015 surgery (R. 21)

Against this backdrop comes Plaintiff's submission to the AC of Dr. Supler's March 2019 RFC assessment. Although Plaintiff is correct that treating physicians' opinions are entitled to more weight than opinions from non-treating sources, Dr. Supler's RFC assessment is inconsistent with his treatment notes, as explained above. Additionally, a claimant's entitlement to DIB requires a disability "which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). Here, substantial evidence shows that Plaintiff recovered enough from her second neck surgery (in June 2012) to return to substantial gainful activity until March 2015, and that following her November 2015 neck surgery, Plaintiff felt "1000% better." (R. 381)

Leading up to Plaintiff's November 2015 surgery, Plaintiff's pain management providers documented her neck pain and cervical spine tenderness (R. 291, 293), but noted she had full

10

strength and was doing well on medications. In October 2014, Plaintiff reported some headaches and discomfort but "nothing really radiates down into the arms as it did preoperatively." (R. 296) She had full strength in her upper extremities. (R. 296-97) In June 2015, at a routine follow-up appointment, Dr. Sontag refilled Plaintiff's medications and reported a normal review of systems, and Plaintiff said she was doing well. (R. 351) In October 2015, she reported severe neck pain to Dr. Sontag, who again refilled her hydrocodone prescription while she awaited surgery. (R. 247-50) So even considering the new evidence submitted to the AC, the ALJ's decision to deny benefits is supported by substantial evidence in the record. *See Timmons*, 522 F. App'x at 902. The AC did not err in finding there was no reasonable probability Dr. Supler's RFC assessment would change the administrative result.

### 2. *ALJ's assessment of Plaintiff's subjective complaints*

Plaintiff's next contention is that the ALJ's consideration of her neck pain ran afoul of the Eleventh Circuit's pain standard (Doc. 20 at 31). The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to his pain, she must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate (*i.e.*, 20

C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513(b)(2)-(6). In the end, credibility determinations are the province of the ALJ. *Mitchell,* 771 F.3d at 782.

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After consideration of the claimant's statements throughout the record, both documentary and oral, the undersigned finds that the objective medical evidence fails to substantiate her assertions. While her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations attested to by the claimant are not supported by medically acceptable clinical and diagnostic techniques. Further, there is insufficient objective medical evidence that the claimant's asserted impairments are of such severity that they can reasonable be expected to give rise to the alleged level of pain and functional limitations.

(R. 19-20) This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, I find that it is. The ALJ summarized Plaintiff's testimony that, during the relevant time period, neck pain limited her ability to function, surgeries did not alleviate her pain, she was drowsy and fatigued from her medications, and she was unable to lift anything over 10 pounds or sit or stand for more than 15 to 20 minutes at a time. (R. 19) Plaintiff reported that her neck pain

increased with standing, sitting, walking, or performing any activity for more than a few minutes at a time. (R. 188, 208)

But, as summarized above, Plaintiff's medical records during 2015 paint a different picture. Plaintiff's November 2015 surgery was a success, and Dr. Supler released her from his care within three months.  Further, records from Plaintiff's pain management providers leading to her November 2015 surgery document Plaintiff's neck pain and tenderness in her cervical spine (R. 291, 293), but otherwise she had full strength and was doing well on medications.  In October 2014, Plaintiff reported some headaches and discomfort but "nothing really radiates down into the arms as it did preoperatively." (R. 296)  She had full strength in her upper extremities. (R. 296-97) In June 2015, Plaintiff had a routine appointment with Dr. Sontag for medication refills, and she reported she was doing well. (R. 351)  The doctor's review of systems was normal. (*Id*.)  In October 2015, she reported severe neck pain to Dr. Sontag, and the pain management doctor renewed her hydrocodone prescription. (R. 247-50)  She had surgery the next month that helped her feel "1000% better" by February 2016. (R. 381)  A December 2015 cervical x-ray (post-surgery) showed "the hardware is intact without evidence of loosening.  The AP alignment is normal.  There is no compression fracture.  The nonfused disc space heights are preserved.  There is a rightward curvature of the cervical spine.  The odontoid process is intact.  There is normal alignment of the lateral masses of C1 and C2.  There is no prevertebral soft tissue swelling." (R. 402)

On this record, the ALJ's consideration of Plaintiff's subjective complaints of pain is supported by substantial evidence.  At this point in the analysis I emphasize that, to the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have

reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's complaints of neck pain and limiting her to light work.

    D.    *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on November 10, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE